**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRANDIE BARRETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 04 C 50149 |
| v. | ) |
| | ) |
| BRIAN BEMIS AUTO WORLD and | ) HONORABLE DAVID H. COAR |
| AMCORE BANK, N.A., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

**I.   BACKGROUND**

Plaintiff Brandie Barrett purchased a used 1999 Jeep Cherokee from defendant Brian Bemis Auto World on March 20, 2003. The dealership arranged for financing for the vehicle purchase through defendant Amcore Bank, N.A. Barrett was shown an odometer disclosure statement which represented that the Jeep Cherokee had 56,356 miles on it at the time of sale. In addition, she purchased an extended service policy for the vehicle, credit life insurance, credit disability insurance, and GAP insurance. At the time of purchase, Barrett signed a service contract application that did not provide an expiration date for the extended service policy. Barrett signed a Retail Installment Contract to finance the purchase amount of $19,033.52, plus a finance charge of $4,472.68, for a total sale price of $23,506.20. Barrett put no money down. Brian Bemis Auto World did not disclose that the Jeep Cherokee's title, dated July 29, 2002, bore a "not actual mileage" legend. Barrett drove the vehicle off the lot that day. When the

Jeep's certificate of title arrived at Brian Bemis Auto World, a title clerk for the dealer signed Brandie Barrett's name on the title as the Buyer in the First Reassignment section. Barrett had not given the dealer a power of attorney and had not authorized the dealer to sign her name to the title. On March 20, 2003, the day of purchase, Barrett took the Jeep to the Bemis Auto World service department about a vibration in the vehicle. The service records reflect an odometer reading of 56,371 at 10:39 a.m. On the evening of March 20 or March 21, 2003, however, the Jeep overheated and had to be towed back to the dealer for service.[1] According to the Tri-State Towing receipt, the Jeep had 56,911 miles on it at the time of towing. The Brian Bemis Auto World service department logs also reflect a mileage of 56,911 as of March 21, 2003. According to the Bemis service department logs, the Jeep had a mileage of 56,356 on March 13, 2003, when it was previously serviced. After purchasing the Jeep, Barrett experienced problems with the brakes, the air-conditioning and heating systems, and the panel instruments and lights. She took the vehicle to Brian Bemis Auto World for service and repairs on multiple occasions between March and October 2003.

      On October 17, 2003, Barrett, through counsel, sent a letter to Brian Bemis Auto World and Amcore Bank in which she notified them of her belief that the Jeep Cherokee was defective, her intention to revoke acceptance of the vehicle, and her demand for rescission of the purchase contract and return of all funds paid. In addition, she demanded $35,000 under Illinois' consumer fraud statute. Barrett did not return the vehicle to the dealer. On March 24, 2004, she

---

[1] The imprecision in the date results from conflicting information on the tow receipt. The handwritten portion of the receipt reflects a date of March 20, 2003, but the computer generated portion (on the same page) reflects a purchase order date of March 21, 2003. The difference is material.

filed an eight-count complaint against Brian Bemis Auto World and Amcore Bank, N.A. in this court. Her complaint asserts three claims under federal law: Count I alleges a breach of written warranty against Brian Bemis Auto World under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301; Count V alleges violation of the Federal Odometer Act, 49 U.S.C. § 32701, against Brian Bemis Auto World; and Count VIII seeks rescission of the Retail Installment Contract against assignee Amcore Bank, N.A. pursuant to the FTC Holder Rule, 16 C.F.R. § 433.2. Barrett also alleges breach of implied warranty of merchantability, 810 ILCS 5/2-314 and 15 U.S.C. § 2308 (count II); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 (count III); common law fraud (count IV); violation of the Illinois Motor Vehicle Act, 625 ILCS 5/3-112.1 (count VI); and asserts a right to revoke acceptance of the vehicle under 810 ILCS 5/2-608 (count VII).

Currently pending before this Court are Plaintiff's Motion for Partial Summary Judgment as to Count III (ICFA), and Defendant Amcore Bank, N.A.'s Motion for Summary Judgment on Count VIII (rescission).

## II. LEGAL STANDARD

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001). "If, however, the record as a whole 'could not lead a rational trier of fact to find for

the non-moving party, there is no genuine issue for trial.'" *Id.* Once a motion for summary judgment has been filed, "the burden shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial." *Liu v. T&H Machine, Inc.*, 191 F.2d 790, 796 (7th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-movant must provide more than a "mere scintilla" of evidence to carry its burden under the summary judgment standard. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, weighing evidence, making credibility determinations, and drawing reasonable inferences are functions of a jury, not of a judge deciding a summary judgment motion. *Id.* at 255.

## III. ANALYSIS

### A. Magnuson-Moss Warranty Act Claim Dismissed On Court's Own Motion

On its own motion, this Court dismisses Barrett's Magnuson-Moss Warranty Act claim (Count I) for lack of subject matter jurisdiction. Under applicable law in the Seventh Circuit, a plaintiff must plead an amount in controversy of more than $50,000 in order to assert a valid claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301. *See Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402 (7th Cir. 2004); *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 957 (7th Cir. 1998). The formula used to calculate the amount in controversy in a case such as this is the replacement cost of the vehicle minus the value of the vehicle in its current state minus the use value obtained from the allegedly defective vehicle. *Schimmer*, 384 F.3d at 405-406. There is no set of facts before this Court that establishes the required amount in controversy. The replacement cost of the Jeep Cherokee, for the purposes of this calculation, is assumed to be the purchase price of the vehicle. The cash price of the Jeep Cherokee without the extended service

policy, credit life, disability, or GAP coverage, was $13,745. Even if this Court considered the finance charge in addition to the cash price of the vehicle, Barrett only paid $23,506.20. Barrett attempted to revoke acceptance in October 2003 by way of a letter to Bemis Auto World from her counsel. During the seven months prior to her counsel's letter to the dealer, Barrett drove approximately 150 miles per week, for a total of approximately 4,350 miles. Thus, Barrett received some use value for the seven months and 4,350 miles she got out of the Jeep; that use value must be subtracted from the purchase price. Barrett in fact contends that she attempted orally to revoke acceptance on March 21, 2003, or the day after she purchased the vehicle. From the parties' briefs and supporting documents, it appears that it was John Barrett, plaintiff's father, who made the oral statement that plaintiff was revoking acceptance. Plaintiff provides no evidence that she was unable to contract on her own behalf or that her father was authorized to act for her. Even if it was Plaintiff who orally revoked acceptance, there is no evidence that she returned the vehicle or its keys to the dealer. But assuming for the sake of argument that Plaintiff had validly revoked acceptance on March 21, 2003,[2] after driving the Jeep for less than 600 miles, she still cannot meet the minimum amount in controversy requirement. Even if, for the purpose of this calculation only, this Court accepted that the Jeep Cherokee has a present value of zero, there is no way that Barrett can allege an amount in controversy of more than $50,000. In fact, she cannot allege even half that amount. Thus, this Court dismisses plaintiff's Count I for lack of subject matter jurisdiction.

---

[2] This Court does not accept Plaintiff's alleged oral revocation as effective, but rather is assuming it for the limited purpose of analysis in this opinion only.

B.  **Plaintiff's Motion for Partial Judgment On ICFA Claim**

Plaintiff seeks partial summary judgment on her assertion that Brian Bemis Auto World violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 5/505-2. Specifically, Barrett contends that the Jeep had at least 500 more miles on it than the odometer disclosure statement or the dealer employees represented at the time of sale, that the dealer knew this, that the dealer signed Barrett's name on the Jeep's title without a power of attorney, and that the dealer misrepresented the duration of the service contract. As support for this assertion, Plaintiff provides a copy of a service record from Brian Bemis Auto World, dated March 21, 2003, reflecting that the Jeep Cherokee's mileage was 56,911 on that date; the Jeep's title with Plaintiff's name signed by someone other than Plaintiff;[3] and a copy of both the service contract form and several service department records, which show Barrett purchased a 24 month/24,000 mile service contract on the Jeep. Barrett maintains that a dealer employee orally represented to her that she was purchasing a 36 month/36,000 mile service contract but that the service contract she signed at the time of sale did not have any duration option selected. Nevertheless, she asserts that she believed that she had purchased a 36 month/36,000 mile service contract, not a 24 month/24,000 mile contract. Barrett claims that a dealer employee modified the contract after she left the premises by manually selecting the 24 month/24,000 mile option, instead of the 36 month/36,000 mile option she claims she was told she had purchased. Thus, Barrett contends, the dealer told her she had purchased a 36 month policy but instead sold her a 24 month policy.

---

[3] Brian Bemis Auto World submitted an affidavit from one of its employees, Toni Enburg, stating that she signed Plaintiff's name on the Jeep's certificate of title because she mistakenly believed that Plaintiff had filled out a power of attorney form.

In order to prevail under section 2 of ICFA, a plaintiff must show 1) a deceptive act or practice by the defendant; 2) the defendant's intent that the plaintiff rely on the deception; 3) the occurrence of the deception in the course of conduct involving trade or commerce; and 4) actual damage to the plaintiff; 5) proximately caused by the deception. *Oliviera v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002) (citing *Zekman v. Direct Am. Marketers, Inc.*, 695 N.E.2d 853, 861 (Ill. 1998). Unlike a cause of action under common law fraud, ICFA does not require a *scienter* showing. Thus, innocent misrepresentations may be actionable. *Miller v. William Chevrolet/Geo, Inc.*, 762 N.E.2d 1, 12 (Ill. App. Ct. 2001); *see also Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002) ("Recovery may be had for unfair as well as deceptive conduct.").[4]

A "deceptive practice" includes a "material misrepresentation" under common law fraud, such that the plaintiff would have acted differently had she been aware of the misrepresentation. *Miller*, 762 N.E.2d at 7. Barrett alleges that Brian Bemis Auto World's misrepresentation of the Jeep's mileage, unauthorized signing of her name to the certificate of title, and failure to disclose that the Jeep had a "not actual mileage" title constitute deceptive acts for the purposes of ICFA. Further, she contends that information about a vehicle title and its mileage are the types of information a car buyer would be expected to rely on when deciding whether or not to purchase a vehicle, thus satisfying the intent requirement of ICFA. There is no dispute that the events occurred in the course of trade or commerce. Barrett asserts that she was damaged because the Jeep she bought had greater mileage than represented and a shorter service contract than the

---

[4] This Court notes that Plaintiff's apparent aversion to providing proper citations, including pin cites, or, in several instances, to providing citations at all, not only disregards basic legal writing standards but also demonstrates a lack of respect for the time and resources of Defendants and the Court.

dealer represented to her at the sale.[5] Finally, Barrett states that Bemis Auto World's misrepresentation of the duration of the service contract she purchased and the mileage and title status of the Jeep were the proximate cause of her injury.

Bemis Auto World disputes Barrett's characterization of events. First, Bemis Auto World asserts that the Jeep was not, in reality, a "not actual mileage" vehicle. Rather, the previous owners erroneously had recorded it as such when they registered for the title. As support, Bemis Auto World submitted an affidavit from Laura Boyer, one of the previous owners of the Jeep, stating that she or her husband mistakenly checked the "not actual mileage" box when completing an application for an Illinois Certificate of Title; instead, the "actual mileage" box should have been checked. As further support, Bemis Auto World submitted an affidavit from Robert Myers, Vice President and Collections Manager of Amcore Bank, N.A., the lienholder on Barrett's Jeep. Myers attached a copy of a corrected Illinois certificate of title to his affidavit, showing that the Jeep's title had been corrected to an "actual mileage" title as of July 14, 2005.

Bemis Auto World then disputes Barrett's characterization of Bemis' signing Barrett's name to the Jeep's certificate without having a power of attorney from Barrett as an unfair act. Instead, Bemis Auto World asserts that one of its employees "may have inadvertently assumed Barrett had executed a Power of Attorney form,"[6] but that there was no intent that Barrett rely on

---

[5] Indeed, the service contract was shortened by the alleged mileage discrepancy because it was limited by mileage, in addition to time.

[6] This erroneous assumption was apparently based on a document in the "deal bag" for the sale of the Jeep, which provided a checklist of all required paperwork. On the checklist, the space for power of attorney form is checked off, as if to indicate that Barrett had provided a power of attorney. There is no indication of who checked the box or when, and Barrett denies ever authorizing Bemis Auto World to sign her name without her presence or knowledge. Further, Bemis Auto World does not dispute that Barrett did not, in fact, provide a power of

the unauthorized signature. Thus, Bemis Auto World contends there remains an issue of disputed material fact as to whether the act of signing Barrett's name on the title was intended to induce Barrett's reliance.

Third, Bemis Auto World disputes Barrett's assertion that the Jeep had at least 500 miles more than the Odometer Disclosure Statement stated at the time of purchase. Instead, Bemis Auto World produced repair invoices from its service department that show that the Jeep's odometer was recorded as reading 56,371 on March 20, 2003, the date of purchase. Finally, Bemis Auto World asserts that it is not company policy to misrepresent the length of service contracts. Barrett paid $1,850 for an extended warranty on the Jeep; Bemis asserts that a three-year warranty, which Barrett claims she believed she had purchased, would have cost at least $2,300. Bemis Auto World produced a copy of an extended warranty price list for "Equis Pre-Owned Vehicle Rates" dating from November 2003. According to this price list, a 24 month/24,000 mile Plan E, which Barrett purchased, for Class 4 vehicle (such as a Jeep Grand Cherokee) would cost $1,662.[7] Bemis Auto World does not produce an affidavit or any evidence from the finance manager who made the alleged oral misrepresentation to Barrett about the duration of the extended warranty.[8]

---

attorney.

[7] Brian Bemis stated in his affidavit that a three-year extended warranty for a Jeep Grand Cherokee would be "at least" $2,300. The Equis Pre-Owned Vehicle Rates list, however, provides a price for a three-year Plan E, Class 4 warranty of $2,023. A three-year Plan E, Class 5 vehicle warranty was priced at $2,388 in November 2003. A two-year Plan E, Class 5 warranty was priced at $1,890.

[8] Indeed, Brian Bemis Auto World admits it has been unable to locate the employee, Randy Howley, who no longer works for the defendant and is no longer a resident of Illinois.

Even assuming Barrett has demonstrated a deceptive act or practice for the purpose of summary judgment, Bemis Auto World contends that she cannot establish that she suffered an injury. Damage may not be presumed under ICFA. *Tolve v. Ogden Chrysler Plymouth, Inc.*, 755 N.E.2d 536, 541-42 (Ill. App. Ct. 2001). The title to the Jeep, although erroneously marked "not actual mileage" at the time of purchase, has now been corrected. According to Bemis Auto World, Barrett contracted for a vehicle with clean title; she is the owner of a Jeep with clean title; and she has driven that vehicle for tens of thousands of miles. This argument overstates ICFA's damage requirement. If Bemis Auto World's position were the law, then a dealer could engage in a host of deceptive acts or practices as long as it was able to rectify such acts by the time any court began to consider a suit arising from such conduct. This is not the purpose of ICFA. At the time Barrett purchased the Jeep, the parties agree that it had a "not actual mileage" title. A statement that the reported mileage is not the actual mileage introduces risk into the question of value. One reasonable inference is that the vehicle was worth less than advertised. Thus, Barrett was at least nominally damaged when she purchased a vehicle that was misrepresented to her by Bemis Auto World, as having a clean title history, despite having the defective title in its possession.

This Court finds that Barrett has not established, as a matter of law, a violation of ICFA with respect to the service contract. Barrett essentially provides only her own conclusory statement that the finance manager, whom neither side has located, orally represented to her that she was purchasing a 36 month/36,000 mile plan. All the documentation, including the warranty provider's price list from eight months after the sale date, indicate that a three year plan would have cost significantly more than Barrett paid. As such, the service plan remains a disputed issue

of material fact. Further, this Court declines to find at this juncture that Bemis Auto World violated the ICFA with respect to the Odometer Disclosure Statement. It is unclear from the evidence presented what the odometer of the Jeep read at the time of purchase or in the days immediately following purchase. This issue also remains disputed and must be resolved at trial.

This Court does find that Barrett has established that Brian Bemis Auto World signed her name to the Jeep's certificate of title in violation of the ICFA and that Bemis failed to disclose that the title bore a "not actual mileage" legend. Further, this Court finds that the failure to disclose and the dealer's unauthorized act of signing Barrett's name on the title constitute a deceptive act, undertaken with the intent that Barrett rely thereon, occurring in the course of trade or commerce, which actually and proximately damaged Barrett. The issue of damages, if any, remains in dispute and is for the finder of fact to determine.

Therefore, this Court grants summary judgment to Barrett on the issue of liability for violating the Illinois Consumer Fraud Act (count III).

### C. Amcore Bank, N.A.'s Motion for Summary Judgment

Amcore Bank, N.A. ("Amcore") moves for summary judgment on Count VIII of Barrett's complaint, which seeks revocation of acceptance and rescission of the Retail Installment Contract ("RIC") under the FTC "Holder Rule," 16 C.F.R. § 433.2. Amcore asserts that it is entitled to summary judgment because Barrett continuously has used the Jeep since the date of purchase and therefore is not entitled to revoke the RIC. Because this Court finds that Barrett's continued use of the Jeep after her purported revocation was unreasonable, Amcore's motion is granted as to Count VIII.

Count VIII of Barrett's complaint seeks revocation of acceptance and rescission of the RIC under the FTC Holder Rule. This agency regulation requires that a consumer credit contract, such as an RIC, must contain the following language in at least ten point, bold face type:

> Notice
> Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

16 C.F.R. § 433.2. Under this consumer protection regulation, an assignee steps into the shoes of the seller. Assignees of RICs, such as Amcore, may be held liable up to the amount paid under the credit contract for any valid claims against the seller. Amcore argues, however, that a cause of action only exists if the facts of the case support rescission under state law.

Illinois law requires a buyer who seeks revocation to show that 1) a nonconformity in the goods that substantially impairs the value of the goods to the buyer; 2) acceptance was made on the reasonable assumption that the defect would be cured or because the acceptance was made without knowledge of the defect due to the difficulty of discovering the defect or to the seller's assurances; 3) revocation was made within a reasonable time after the nonconformity was or should have been discovered; 4) revocation occurred before a substantial change in the goods took place not caused by their own defects; and 5) the buyer gave the seller due notification. 810 ILCS 5/2-608 (2005).

The parties agree that Barrett, through her attorney, sent written notice of revocation to Bemis Auto World on October 17, 2003.[9] The revocation letter also contained a demand for

---

[9] Barrett, in her response brief, argues that she orally revoked acceptance on March 21, 2003, during a visit to Bemis Auto World. The facts do not support this assertion. At best, the facts suggest that Barrett's father verbally revoked acceptance of the vehicle. As previously

$35,000 under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). Amcore contends that the seven months between the date of purchase and the letter sent by Barrett's counsel to Bemis Auto World, notifying Bemis of Barrett's revocation, was not reasonable. It is undisputed that Barrett drove the Jeep at least 4,350 miles during those seven months. It is also undisputed that Barrett continued to drive the Jeep after the alleged notice of revocation, and that the Jeep had over 98,000 miles on it as of July 2005.

Following revocation, a buyer must act as a bailee for the seller and preserve the goods in question. A buyer who continues to use the goods may nullify revocation. *Valentino v. Glendale Nissan, Inc.*, 740 N.E.2d 538, 542 (Ill. App. Ct. 2000); *see also Basselen v. General Motors Corp.*, 792 N.E.2d 498, 503 (Ill. App. Ct. 2003) (quoting). Under Illinois law, however, continued use of a vehicle does not defeat revocation if the continued use was reasonable, e.g., where ceasing use would cause undue hardship to the buyer. *Basselen*, 792 N.E.2d at 503. Amcore contends that Barrett had access to two other vehicles owned by her parents, with whom she resided. At Barrett's deposition, she testified that the neighbor living behind her family had three vehicles which she could borrow, if needed. At the time of her attempted revocation in October 2003, Barrett had driven at least 4,350 miles; as of her deposition in July 2005, she had driven the vehicle for at least another 37,500 miles. Thus, Amcore asserts that Barrett's continued use of the Jeep was unreasonable. Barrett responds that she continued to use the vehicle out of necessity. She lived in Waterman, Illinois, and had no access to public transit. The

---

noted, however, there is no evidence that Barrett's father was authorized to act on her behalf. Moreover, Barrett not only kept the vehicle and continued to drive it, but also brought the vehicle back to the dealer for several repairs. She then submitted a written revocation on October 17, 2003, in which she made no mention of the March 21, 2003 purported oral revocation. This Court therefore finds that Plaintiff did not revoke acceptance in March 2003.

parties agree that Barrett's father used his vehicle to commute to and from work. Barrett argues, however, that she could not use her mother's vehicle, a specially equipped van, on a regular basis because that would leave her mother without any means of transportation. Moreover, the van is required to provide transportation for Barrett's sister, who has cerebral palsy. In addition, Barrett asserts that she was on a fixed income and lacked financial means to purchase another vehicle.

If lack of access to public transit was a sufficient basis to permit continued use of a vehicle after revocation, then summary judgment motions would be easily defeated in most areas of the country. As in *Basselen*, Plaintiff has failed to demonstrate that she is entitled to revocation. A party's inability to purchase another vehicle also is insufficient to permit continued use after revocation. The facts in this case support a finding that Barrett used the vehicle as her own even after revocation, rather than acting as a bailee for the seller. *See, e.g., Gasque v. Mooers Motor Car Co.*, 313 S.E.2d 384, 389 (Va. 1984); *Bryant v. Prenger*, 717 S.W.2d 242, 244-45 (Mo. App. 1986). Barrett fails to provide more than conclusory statements that ceasing to use the Jeep would have caused her undue hardship. This Court therefore finds summary judgment appropriate for Amcore on Count VIII.

With respect to Barrett's claim for rescission of the RIC, Amcore argues that Barrett does not have a cause of action under applicable Illinois law. Specifically, Amcore contends that the FTC Holder Rule provides a cause of action to a plaintiff such as Barrett only if the facts of the case permit rescission under state law. *Mount v. LaSalle Bank Lake View*, 926 F. Supp. 759, 764 (N.D. Ill. 1996). Under Illinois law, the standard for rescission is "whether ... the matter, in respect to which the failure of performance occurs, is of such a nature and of such importance

that the contract would not have been made without it." *Id*. at 765 (quoting *Felde v. Chrysler Credit Corp.*, 580 N.E.2d 191, 197 (Ill. App. Ct. 1991). The evidence produced by the parties demonstrates that the Jeep had a "not actual mileage" title at the time of purchase and that this fact was not disclosed to Barrett. A title defect of that nature, even one that was subsequently corrected (after litigation commenced, it must be noted), diminishes the value of the affected vehicle. It would not be unreasonable to assert, as Barrett does, that she would not have purchased the vehicle if she had known of the title defect. Thus, this Court finds that Barrett's derivative claims against Amcore may proceed because she has alleged sufficient facts that rescission is not foreclosed under Illinois law.

**Conclusion**

For the foregoing reasons, Plaintiff's Count I is dismissed on this Court's motion for lack of subject matter jurisdiction; Plaintiff's motion for partial summary judgment is granted as to Count III; and Defendant Amcore Bank, N.A.'s motion for summary judgment is granted as to Count VIII.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **November 29, 2005**